IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 16-cv-61676-WJZ

AROUND THE CLOCK A/C SERVICE, LLC,

    Plaintiff,

vs.

ALL YEAR COOLING AND HEATING, INC.,

    Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMEMT
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, All Year Cooling and Heating, LLC ("AYC"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves for summary judgment on the sole remaining claim of trademark infringement alleged in the Complaint filed by Plaintiff, Around the Clock A/C Services, LLC ("Plaintiff"), and in support thereof, states as follows:

**I.    INTRODUCTION**

In this action, Plaintiff complains that the phrase "Air around clock" appeared next to AYC's name when an internet search of the Plaintiff's name was conducted on the Bing™ search engine. As set forth herein, however, there is no evidence that AYC was responsible for the phrase appearing in its ad title or ad description. AYC did not request its internet marketing company to include the phrase "Air around clock" in its ad title or ad copy, nor did AYC make such a request of Bing directly. (AYC's Statement of Material Facts (hereafter, "SMF"), ¶ 4). To the contrary, the unconverted evidence reveals that the phrase "Air around clock" appeared in the search results of Plaintiff's name, "Air Around the Clock," solely as a consequence of a new

program rolled-out by Bing that automatically inserted keywords into the ad titles or ad descriptions, which AYC never requested, affirmatively opted into or, for that matter, *was even aware* of until it received Plaintiff's Complaint.  (*Id.*, ¶¶ 9-15).

For its part, Plaintiff has done little to nothing to prosecute its claim since filing its Complaint on July 14, 2016.  Upon receiving that pleading, at which time AYC first learned that the phrase "Air around clock" was allegedly appearing next to its name in Bing search results, AYC immediately contacted its internet marketing company, who then contacted Bing, who confirmed that neither AYC nor its internet marketing had inserted the search term "Air Around Clock" in AYC's ad copy.  (*Id.,* ¶ 14).  Rather, the change that initiated the placement of the word "Air around clock" into AYC's ad description was an automated action by Bing that resulted from the Bing's new Long Ad Title Annotations program.  (*Id.*, ¶ 15).

By July 20, 2016, only a few days later, the challenged phrase was no longer appearing next to AYC's name.  That same day, Plaintiff filed its Motion for Preliminary Injunction and, despite being informed by undersigned counsel that the phrase no longer appeared in Bing search results, Plaintiff chose to press forward with the demanded injunctive relief.  Upon receiving AYC's well-supported Opposition, which showed that the phrase was no longer appearing, did not appear as a result of any actions taken by AYC, and should not appear again, Plaintiff did <u>not</u> file a reply memorandum.  This prompted the Court to set a Status Conference on October 28, 2016, to inquire as to whether the case was "still pending" or could be dismissed. (*See* Transcript of Status Conference, p. 2:18-22, a true and copy of which is attached hereto as **Exhibit "1"**).  Plaintiff's counsel objected to dismissal, stating that "we still are not satisfied with completely the explanation that was given." (*Id.*, p. 3:9-10).

Now, several months later, the fact remains undisputed – AYC was <u>not</u> responsible for the phrase "Air around clock" appearing in its ad title or ad description.[1] This fact alone defeats Plaintiff's claim for trademark infringement. However, in addition, there is no evidence that the appearance of the challenged phrase in the Bing search results of Plaintiff's name caused any consumer confusion or was likely to cause confusion. Accordingly, for each of these reasons, explained in full below, AYC is entitled to summary judgment in its favor.

## II. UNDISPUTED FACTS

AYC refers to and incorporates its Statement of Material Facts filed concurrent with this Motion pursuant to S.D. Fla. L.R. 56.1.

## III. ARGUMENT

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion,

---

[1] In bears further noting, to ensure that the record is clear, that the phrase "Air around clock" only appeared in search results next to AYC's name in its ad title or ad description when a search of the Plaintiff's name, Air Around the Clock, was conducted on the Bing search engine. Plaintiff has not alleged, and there is no evidence in the record, that the challenged phrase appeared when any *other* search terms were used – for example, a search of "air conditioning repair in South Florida." This is because the phrase appeared solely as a consequence of keywords being auto-populated into AYC's ad title or ad description by Bing's "Long Ad Title Annotation" feature. (SMF, ¶¶ 9-15) "Keywords" are words or phrases that are used to match internet advertisers with the terms people are searching for. (*Id.*, ¶ 3). Claims of trademark infringement based on the use of keywords pertaining to a competitor are routinely rejected and, even more significantly, the Complaint does <u>not</u> allege, nor has Plaintiff brought any claim complaining of AYC's use of keywords. (D.E. 1, Compl.); *see also, e.g., Earthcam, Inc. v. OxBlue Corp.*, 49 F. Supp.3d 1210, 1240-41 (N.D. Ga. 2014) (granting summary judgment in favor of defendant on plaintiff's claim for trademark infringement based on purchase of term "oxblue" as a search engine keyword). The Complaint also makes no allegations, and there is no record evidence, that the phrase "Air around clock" was appearing next to AYC's name on any internet search engine other than Bing. (SMF, ¶7).

and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant may point out to the court that there is an <u>absence of evidence to support the nonmoving party's case</u>.  *See id* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986).  According to the plain language of Rule 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita*, 475 U.S. at 587.  Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must present affirmative evidence to support its claim.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## THERE IS <u>NO</u> EVDIENCE SUPPORTING PLAINTIFF'S CLAIM FOR TRADEMARK INFRINGEMENT

To prevail on its trademark infringement claim, Plaintiff must show that (1) its mark is valid (i.e., properly registered, not generic, not abandoned through non-use); (2) its mark was ***used in commerce*** by AYC without Plaintiff's consent; and (2) the unauthorized use was ***likely to cause confusion***, or to cause mistake or to deceive.  *See Dieter v. B&H Industries of SW Fla.,* 880 F.2d 322, 326 (11th Cir. 1989); *Burger King, Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983); *Flgolf, Inc. v. Volvik USA, Inc.,* No. 5:13-cv-59, 2014 WL 12573407, at *2 (M.D. Fla. May 6, 2014); *Fila U.S.A., Inc. v. Kim,* 884 F. Supp. 491, 494 (S.D. Fla. 1995).  As explained

below, there is no evidence that (i) AYC used Plaintiff's marks in commerce, and (ii) assuming *arguendo,* that Plaintiff *could* show "use in commerce," there is no evidence the alleged use actually caused any consumer confusion.

A.  **AYC WAS <u>NOT</u> RESPONSIBLE FOR THE PHRASE "AIR AROUND CLOCK" APPEARING NEXT TO ITS NAME ON THE BING SEARCH ENGINE.**

Plaintiffs' claim for trademark infringement fails because AYC did <u>not</u> "*use*" the phrase "Air around clock" in commerce within meaning of the Lanham Act.  Instead, the phrase "Air around clock" appeared next to AYC's name in the results of an internet search performed on the Bing search engine as a consequence of a new feature rolled-out by Bing, which automatically inserted keywords into ad titles, and which neither AYC nor its internet marketing company ever actively or knowingly consented to or opted into.

Trademark infringement is proscribed by 15 U.S.C. § 1114(1)(a), which prohibits any person, without the consent of the trademark registrant, from "*use* in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." (emphasis added).  "The first step of a trademark infringement action is to demonstrate an unauthorized '*use*' of the plaintiff's mark in commerce." *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1242 (11th Cir. 2007) (citations omitted) (emphasis added). *See also DaimlerChrysler AG v. Bloom,* 315 F.3d 932, 936 (8th Cir. 2003) ("Trademark infringement requires, "as a prerequisite to finding liability, that the defendant 'use[d] in commerce' the protected mark or a colorable imitation thereof).

The tem "use" in the "used in commerce" requirement of the Lanham Act means that the defendant must have engaged infringing conduct that is attributable to him or her or that he or

she was otherwise responsible for the allegedly unlawful "uses." *See Optimum Technologies,* 496 F.3d at 1242 (affirming summary judgment where there was no evidence that defendant was responsible for infringing conduct); *Hebeeba's Dance of the Arts, Ltd. v. Knoblauch*, 430 F. Supp.2d 709, 713 (S.D. Ohio 2006) (stating: "[b]efore a person can be held liable for direct trademark infringement, they must have *used* a mark confusingly similarly to another person's trademark"). A plaintiff's failure to establish use of the mark in commerce by the defendant subjects a claim for trademark infringement to immediate dismissal. *See Gucci Am., Inc. v. Frontline Processing Corp.,* 721 F. Supp.2d 228, 247 (S.D.N.Y. 2010) (concluding that plaintiff had not pled sufficient facts to support theory of direct infringement where "there is no indication that any of the defendants actually 'used the mark in commerce'"); *Triple-I Corp. v. Hudson Assocs. Consulting, Inc.,* 713 F. Supp.2d 1267, 1281 (D. Kan. 2010) (entering summary judgment in favor of the defendant where the plaintiffs "have not directed the Court to any evidence of [defendant's] use, or any of its officers and employees' use, of these marks").

In the instant case, Plaintiff contends that the appearance of the phrase "Air around clock" next to AYC's name in the results of a search performed on the Bing search engine constitutes AYC's "use in commerce" of the Plaintiff's trademarks. (D.E. 1, Compl., ¶ 35). It is undisputed, however, that AYC did not request that its internet marketing company, Search Engine Operator, include the phrase "Air around clock" in its ad title or ad copy, or make such a request of Bing directly. (SMF, ¶ 5). Likewise, it is also undisputed that Search Engine Operator did not program, opt in, consent to, advise, or otherwise request that Bing include the phrase "Air around clock" in AYC's ad title or ad copy. (*Id.,* ¶ 5). Rather, the evidence shows that the appearance of the phrase "Air around clock" next to AYC's name in the results of a search of Plaintiff's name was due solely to an automated action by Bing that inserted keywords

into the ad title or ad description pursuant to a new feature implemented by Bing called "Long Ad Title Annotation."[2]  (*Id*., ¶¶ 9-15).  Bing has confirmed that neither AYC nor Search Engine Operator inserted the search term "Air Around Clock" in ad copy.  By email, a representative of Bing explained:

> I have reviewed your account and did not find any ads that include the term "Air Around Clock."  I also checked the change history on this account and did not find any changes which included this term.

(*Id.,* ¶ 14 & Exhibit A attached to Hoffman Decl. (emphasis added)).  Accordingly, AYC did <u>not</u> "use" the phrase "Air around clock" in commerce within meaning of the Lanham Act and therefore, Plaintiff cannot maintain its claim for trademark infringement against AYC.

The Eleventh Circuit's opinion in the case of *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231 (11th Cir. 2007), is on point.  In that case, the plaintiff manufactured and sold a number of flooring and carpeting products, including a two-sided adhesive product applied in strips to the backs of rugs to secure them in place and prevent slippage known as "Lok-Lift Rig Gripper."  The defendant distributed a number of consumer goods, including adhesive tapes, to large home improvement retailers.  In some cases, the

---

[2] The roll-out of Bing's annotation programs caught advertisers and those in the internet marketing field unaware of the change in content of their respective ad titles or descriptions, the reasons for the change, and what to do about it.  *See* "*Bing Ads Pulling Landing Page Content for Ad Description*," "*Bing Ads Annotation Case Landing Page Descriptions in Ads*," and "*Advertisers Can Opt Out of Any Bing Ads Annotation,*" The SEM Post, Search Engine Marketing News From Industry Experts, attached to SMF as Exhibit "4."  The Court may take judicial notice of these articles for the fact that the articles were, in fact, published.  *See United States ex rel. Osheroff v. Humana, Inc.,* 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("courts may take judicial notice of documents such as the newspaper articles . . . for the limited purpose of determining which statements the documents contain"); *United States ex rel. Doe v. Health First, Inc.,* No. 6:14-cv-501, 2016 WL 3959343, at *3 (M.D. Fla. Jul 27, 2016) ("Courts also may take judicial notice of published materials such as newspaper articles, but only for the purpose of determining the content – not the truth – of such materials"); *Lil' Joe Wein Music, Inc. v. Jackson,* No. 06-20079, 2006 WL 5428227, at *5 (S.D. Fla. Oct. 27, 2006) (taking judicial notice, on the basis of several newspaper articles discussing a certain motion picture, that the film received wide commercial distribution).

defendant manufactured its own home improvement products and, in other cases, its products were supplied by outside manufacturers. The plaintiff and the defendant entered into a "handshake" distribution agreement for the Lok-Lift product whereby the plaintiff would manufacture and supply the Lok–Lift product to the defendant, and the defendant would then market, sell, and distribute the product to retailers.

Within a few years, the defendant decided to develop its own adhesive carpet tape product, known as "Hold-It," to replace the plaintiff's Lok-Lift product. The defendant advised its retailers that it was introducing the new product and that it would no longer be selling the plaintiff's product. When the plaintiff discovered that the defendant was selling its own competing product, the plaintiff terminated the parties' agreement. However, in the wake of the termination and the defendant's decision to replace the plaintiff's Lok-Lift product with its own Hold-It product, a certain amount of co-mingling of the products occurred on the shelves of the retailers. More specifically, the defendant's Hold-It product was sold on retail shelves with the Lock-Lift name on the shelf tag or signage sitting underneath, and the Hold-It product sat in "Lock-Lift" labeled display cases.

The plaintiff sued the defendant for federal trademark infringement, among other claims, alleging that the co-mingling and mislabeling of the Lok-Lift product and the Hold-It product on retail shelves infringed its federally registered "Lok-Lift" mark. The district court entered summary judgment in favor of the defendant, determining that those "alleged infringing uses [were] only attributable to the retailers, not [the defendant]." *Id.* at 1238. Specifically, the court found that there was "no evidence that [the defendant] was responsible for generating the Home Depot pricing stickers or shelving labels, which referred to the Hold–It For Rugs product as Lok–Lift Rug Gripper, or for placing the allegedly infringing stickers on the shelves." *Id.*

Because there was no evidence that the alleged infringements at the retail level were attributable to the defendant, the district court concluded that "[the plaintiff's] action for trademark infringement based on the alleged mislabeling and co-mingling of the Lok–Lift mark and the Hold–It product in retail stores would not lie." *Id.* at 1238-39.

On appeal, the Eleventh Circuit affirmed, holding that "the evidence was not sufficient to allege a claim for trademark infringement *directly* against [the defendant] based on these 'uses,' because 'the alleged infringing uses were only attributable to the retailers, not to [the defendant].'" *Id.* at 1242 (emphasis included). The court acknowledged that the plaintiff had presented evidence that some of the retail outlets engaged in unauthorized uses of the plaintiff's mark. However, the appellate court explained that the dispute did not center on whether the mark was "used" in commerce at the level of the retail stores, but rather, the "pivotal question" was "whether these alleged unauthorized "uses" of the mark at the retail level should be attributable to defendant." *Id.* The Eleventh Circuit answered that question in the negative, concluding that "there was 'no evidence that [the defendant] was responsible' for the alleged misuse of [the plaintiff's] registered mark, that is, 'generating the Home Depot pricing stickers or shelving labels' or 'placing the allegedly infringing stickers on the shelves.'" *Id.*

In our case, as in *Optimum*, the "pivotal question" is not whether the phrase appeared next to AYC's name in Bing search results, but whether AYC was *responsible* for that appearance. Because there is <u>no</u> evidence that AYC was responsible for the appearance of the phrase "Air around clock" next to its name, AYC did not "use" the phrase "Air around clock" in commerce within meaning of the Lanham Act. AYC, therefore, cannot be held liable for trademark infringement and is entitled to summary judgment in its favor.[3]

---

[3] In *Optimum*, the Eleventh Circuit also affirmed the trial court's refusal to consider whether the plaintiff presented evidence of secondary liability, concluding that the plaintiffs' claim for trademark infringement

B.     THERE IS **NO** EVIDENCE OF CONFUSION.

Plaintiff's inability to prove that AYC "used" Plaintiff's trademarks is not the only fatal defect in its case. Even *if* Plaintiff could show that AYC "used" Plaintiff's marks – *which it cannot* – there is no evidence that any purported use was likely to cause confusion, as is required to state a claim for trademark infringement. *See Burger King,* 710 F.2d 1480, 1491 (to prevail on a claim for trademark infringement, the plaintiff must demonstrate that the unauthorized use was likely to cause confusion, or to cause mistake or to deceive). "Likelihood of confusion" means **probable** confusion, not mere possible confusion. *See Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp.2d 1261, 1265 (S.D. Fla. 1999). "[R]ecovery under the Lanham Act requires, at a minimum, that confusion, mistake, or deception be 'likely,' not merely 'possible.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 651 (11th Cir. 2007) (internal quotation omitted). A plaintiff must show "a likelihood that an **appreciable number** of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Id.* at 651 (quoting *New Sensor Corp. v. CE Distrib. LLC,* 303 F. Supp. 2d 304, 310-11 (E.D.N.Y. 2004) (emphasis added)).

Courts in the Eleventh Circuit consider the following seven factors when assessing likelihood of confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products

---

was based entirely on a theory of direct liability. *See Optimum,* 496 F.3d at 1245. The appellate court reasoned that "to permit Optimum to now pursue a trademark infringement claim based on a contributory liability theory would require us to convert what is plainly a direct trademark infringement claim into one for contributory infringement [which] . . . is a step we are loath to take, and one for which there appears to be no authority in our circuit." *Id.* Furthermore, even *if* the plaintiff had pled a claim for contributory infringement, the court determined that there was no evidence in the record of Optimum's "knowing participation" in the alleged direct infringement, which is necessary to sustain a claim for contributory infringement. *See id.* at 1246. Similarly, in our case, having failed to established direct infringement, Plaintiffs cannot change course and allege a theory of secondary liability at this juncture in the litigation. Even more significantly, there is absolutely no evidence to support a theory of either vicarious or contributory liability.

the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media used; (6) the defendant's intent; and (7) actual confusion. *See Frehling Enterprises, Inc. v. Int'l Select Grp., Inc*., 192 F.3d 1330, 1335 (11th Cir. 1999). Analysis of the factors "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'"[4] *See Custom Mfg*., 508 F.3d at 649. A court "must consider the circumstances of each particular case, and evaluate the weight to be accorded to individual factors, in order to make its ultimate factual decision." *Jellibeans, Inc. v. Skating Clubs of Ga.,* 716 F.2d 833, 844 (11th Cir. 1983). Evidence of actual confusion, along with the type of mark, are the "most weighty considerations." *See Custom Mfg.,* 508 F.3d at 650. *See also Frehling,* 508 F.3d at 1335.

    1.    *"Air Around the Clock" is a weak mark.*

Classifying the type of trademark at issue determines the level of protection it must be accorded. *See Frehling*, 192 F.3d at 1335. The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives. *See id.* Trademarks are divided into four categories of distinctiveness in the following ascending order of strength: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. *See id.* "The strength of a mark depends on its distinctiveness and on the extent to which third parties have used it." *Ocean Bio-Chem, Inc. v. Turner Network Tele., Inc*., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990).

---

[4] AYC acknowledges that there is similarity in the parties' services offered, how those services are sold, the advertising media used, and that the complained of phrase differs from Plaintiff's purported service mark only by omitting the word "the." For purposes of this Motion for Summary Judgment, AYC has focused on the weakness of Plaintiff's marks, and the overwhelmingly lack of any evidence of actual confusion and of AYC's intent, which subsume the consideration of likelihood of confusion and require summary judgment in favor of AYC.

In its Complaint, Plaintiff contends that "[t]he phrase which comprises the literal element of the AIR AROUND THE CLOCK marks, namely, "Air Around the Clock," are arbitrary as applied to air conditioning services." (D.E. 1, Compl., ¶ 15). An arbitrary mark is a word or phrase that "bears no relationship to the product." *Frehling,* 192 F.3d at 1335. One example of an arbitrary mark frequently provided by the Eleventh Circuit is "Sun Bank" when applied to banking services. *See, e.g., id. See also Armour Group, Inc. v. Labock,* No. 11-61991, 2012 WL 12837289, at *4 (S.D. Fla. Mar. 26, 2012) (in action for infringement of trademark for armored vehicles, the court determined that "Plaintiff's symbol of a charging rhino in a circle design is purely capricious and arbitrary because its literal meaning is unrelated to bullet-resistant armor").

In contrast to the use of the term "Sun," which bears no relationship to banking, Plaintiff use of the term "Air" in "Air Around the Clock" literally invokes air conditioning services. (*See* D.E. 1, Compl., ¶ 8, alleging that Plaintiff is in the business of "air conditioning related services"). Moreover, Plaintiff's website prominently advertises "24-Hour Emergency Service." (Exhibit F to Poppe Declaration). The mark "Air Around the Clock" is therefore a simple declarative statement identifying the characteristics of the services provided by Plaintiff; to wit: 24-hour air conditioning services. The mark is not in any way "arbitrary."

To the contrary, Plaintiff's marks are, at best, descriptive and entitled to protection only if the marks have acquired some level of secondary meaning. *See Mango's Tropical Café, Inc. v. Mango Martini Restaurant & Lounge, Inc.*, 844 F. Supp.2d 1246, 1252 (S.D. Fla. 2011) (noting that descriptive marks identify a characteristic or quality of a product or service, such as "color, odor, function, dimensions, or ingredients"). The Eleventh Circuit's opinion in *Investacorp, Inc. v. Arabian Investment Banking Corporation (Investacorp,) E.C.,* 931 F.2d 519 (11th Cir. 1991),

is illustrative of why the Plaintiff's marks are merely descriptive.  At issue in that case was the mark "Investacorp," which was being used by a corporation in the business of advising their customer in corporate investment opportunities.  The district court found that the mark was suggestive – one level below arbitrary.  On appeal, the Eleventh Circuit reversed, holding that the terms "invest" and "corp." when combined in the term "Investacorp," "literally convey to the observer that appellant is in the business of investing in corporations" and therefore, must be considered descriptive.  *See id.* at 1524.   Likewise, in our case, the words "air,' "around," "the," and "clock" when combined, literally convey to the consumer that Plaintiff is in the business of providing air conditioning services 24 hours a day.  Accordingly, given the mark's mere descriptive quality, Plaintiff's "Air Around the Clock" service mark is not very strong and is entitled to only a low level of trademark protection.

> 2. ***There is no evidence that Defendant intended to use the phrase "Air around clock" in the title of its search results.***

As discussed above, there is also no evidence that AYC intended the phrase "Air around clock" to appear next to its name when a search was conducted on the Bing search engine.[5]  Rather, the evidence reveals that if the phrase "Air around clock" appeared in the ad title next to AYC's  name, it was due solely to independent actions undertaken by a third party, Bing.

> 3. ***There is no evidence of actual confusion.***

Lastly, there is no evidence of "actual confusion."  Indeed, in its Motion for Preliminary Injunction, Plaintiff conceded that it did <u>not</u> have any evidence of actual confusion.  (D.E. 8, Mot., p. 10). "It is undisputed that evidence of actual confusion is the best evidence of a

---

[5] Further evidence of AYC's lack of intent is the fact that phrase "Air around clock" allegedly appeared next to AYC's name only on the Bing search engine. (SMF, ¶ 7; Poppe Decl., Ex. 3).

likelihood of confusion." *Frehling*, 508 F.3d at 1340 (citing John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 978 (11th Cir. 1983).

At the time it filed its Motion for Preliminary Injunction on July 20, 2016, Plaintiff used the excuse that "such evidence is typically not received by Plaintiff," presumably implying that any such evidence would be in the possession of AYC.[6] (*Id.*). AYC, however, is unaware of any customer or potential customer contacting AYC as a result of confusion, mistake, or was being otherwise deceived as to the source of All Year Cooling's or AATC's services due to the phrase "Air around clock" appearing next to AYC's name in the results of a search performed on Bing of Plaintiffs' name. (SMF, ¶ 16).

In sum, because the Air Around the Clock Marks are weak, because AYC did not intend for the phrase "Air around clock" to appear in its ad title, and because there is no evidence that any customer or potential customer was actually confused by the phrase "Air around clock" appearing next to AYC's name in the search results of Plaintiff's name on the Bing search engine, Plaintiff cannot establish a likelihood of confusion and AYC is entitled to summary judgment.

**WHEREFORE**, for all of the reasons discussed above, AYC respectfully requests entry of summary judgment in its favor and against Plaintiff on its claim trademark infringement, together with such other and further relief as this Court deems just and proper.

---

[6] At the time Plaintiff filed its Motion for Preliminary Injunction without any evidence of actual confusion, the phrase "Air around clock" was *already* not appearing next to AYC's name. (*See* AYC's Opposition to Motion for Preliminary Injunction, D.E. 17). It also bears noting that Plaintiff has not retained an expert to opine on or proffer a survey regarding "likelihood of confusion."

Respectfully submitted,


**ARNSTEIN & LEHR LLP**
200 East Las Olas Blvd., Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 713-7600
Facsimile: (954) 713-7700

By: */s/:* Alan R. Poppe
    Alan R. Poppe
    Florida Bar No. 0186872
    Email: apoppe@arnstein.com


*Attorneys for Defendant All Year Heating and Cooling, Inc.*


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on March 7, 2017, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve a copy of the document on all counsel of record or parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


By: /s/: Alan R. Poppe
    Alan R. Poppe
    Florida Bar No.: 0186872

## SERVICE LIST

*Around the Clock A/C Service, LLC v. All Year Cooling and Heating, Inc.,*
United States District Court for the Middle Southern of Florida
Case No. 0:16-cv-61676-WJZ

| | |
|---|---|
| Elias R. Hilal, Esq.<br>WILLIAMS HILAL WIGLAND, PLLC<br>633 SE 3rd Ave., Suite 301<br>For Lauderdale, Florida 33301<br>Telephone: (954) 463-2065<br>Facsimile: (854) 337-0117<br><br>      -and-<br><br>James G. Keys. III<br>THE KEYS LAW FIRM, PLLC<br>3350 SW 148th Ave., Suite 110<br>Miramar, Florida 33027<br>Telephone: (954) 519-2041<br>Facsimile: (954)519-2042<br><br>*Attorneys for Plaintiff Around the Clock A/C Service, LLC* | Alan R. Poppe, Esq.<br>ARNSTEIN & LEHR LLP<br>200 East Las Olas Boulevard, Suite 1700<br>Fort Lauderdale, Florida 33301<br>Tel: (954) 713.7600<br>Fax: (954) 713-7710<br>Email: apoppe@arnstein.com<br><br>*Attorneys for Defendant All Year Cooling and Heating, Inc.* |